RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0179p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

                     *Plaintiff-Appellee*,

    *v.*

JTTON EDWARD WATSON aka J'ttonAli One Eye El Bey,

                     *Defendant-Appellant*.

No. 24-3679

─────────────────

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:21-cr-00110-1—Jeffery P. Hopkins, District Judge.

Decided and Filed:  July 9, 2025

Before:  COLE, GIBBONS, and BUSH, Circuit Judges.

─────────────────

**COUNSEL**

**ON BRIEF:**  Gregory A. Napolitano, LAUFMAN & NAPOLITANO, LLC, Cincinnati, Ohio, for Appellant.  Mary Beth Young, UNITED STATES ATTORNEY'S OFFICE, Columbus, Ohio, for Appellee.

─────────────────

**OPINION**

─────────────────

JULIA SMITH GIBBONS, Circuit Judge.  Having voluntarily waived his right to a jury trial under Federal Rule of Criminal Procedure 23(a), Defendant Jtton Edward Watson[1] was found guilty of felony possession of a firearm in violation of 18 U.S.C. § 922(g)(1) at the

─────────────────

[1]The district court partially granted Watson's oral request for a name change to include his chosen name, J'ttonAli One Eye El Bey, and agreed to allow his chosen name to appear on the district court's docket as an alias. For purposes of this appeal, however, we refer to the defendant as Jtton Watson.

conclusion of a bench trial.  On appeal, Watson challenges the district court's denial of his motion to suppress evidence obtained from a vehicle search conducted on December 5, 2020, arguing that the initial traffic stop, his warrantless arrest, and the subsequent search of his vehicle violated his Fourth Amendment rights.  He also challenges his conviction under 18 U.S.C. § 922(g)(1), arguing that the conviction was not supported by sufficient evidence.

We conclude that the district court did not err in denying Watson's motion to suppress because (i) the initial traffic stop was supported by probable cause, (ii) Watson's arrest was supported by probable cause, and (iii) the search of Watson's vehicle was permissible under the automobile exception.  Additionally, Watson's conviction was supported by sufficient evidence. Accordingly, we affirm.

I.

On December 5, 2020, Officer Homer Wisecup of the Wilmington Police Department, located in Clinton County, Ohio, was on a routine patrol when he received a call from Sergeant Terence Meehan of the Clinton County Sherriff's Department.  During the call, Sergeant Meehan told Officer Wisecup that he had just conducted a traffic stop on an individual with a suspended driver's license from Wilmington who refused to provide identification, claimed that, as member of the "Federal National Society," state laws do not apply to him, and referred to himself as "Jtton One Eye El Bey."  Sergeant Meehan described the make, model, and license plate number of the stopped vehicle and asked whether Officer Wisecup was familiar with the individual. Officer Wisecup had encountered Jtton Watson several months ago in a traffic stop, during which Watson also refused to provide identification.  After the call, Sergeant Meehan determined that the individual was indeed Watson.  Sergeant Meehan informed Watson that his driver's license was suspended and, therefore, he was not permitted to drive.  Watson contacted his mother, who subsequently arrived and assumed responsibility for driving the vehicle on his behalf.

Hours later, Officer Wisecup encountered a vehicle matching the description of the vehicle that Sergeant Meehan had stopped.  Officer Wisecup conducted a license plate check and determined that the vehicle was registered to a corporation under the name "Jtton One Eye El

Bey."   To confirm his suspicions, Officer Wisecup requested that the Wilmington Police Department's dispatch center conduct a driver's license search on the name "Jtton Watson."  The search revealed that Watson's driver's license was suspended.  After observing the vehicle drive past a stop bar at a traffic light, Officer Wisecup initiated a traffic stop.

After stopping Watson, Officer Wisecup identified himself and informed Watson that his driver's license was "coming back suspended."  DE 58-1, Gov't Ex. 1, 00:00:38–00:00:44. Officer Wisecup asked, "You're Mr. Jtton Watson, correct?"  *Id.*, :45–:50.  Watson replied "no" and stated that his last name was "Bey."  *Id.*, :51.  When asked whether he possessed a driver's license, Watson replied, "I don't operate under a license," *id.*, :57–:59, and stated, in reference to Officer Wisecup's earlier call with Sergeant Meehan, that he had "heard that shit going through the radio earlier anyway, and now you're going to violate my rights," *id.*, :1:00–1:05.  Officer Wisecup then stated, "you don't have a valid license, you can't be operating a vehicle, ok?"  *Id.*, 1:09–1:12.  When Watson asked why he was stopped, Officer Wisecup stated that he observed him drive past the stop bar at a traffic light.  *Id.*, 1:15–1:20.

Next, Officer Wisecup requested that Watson provide identification, but Watson refused. *Id.*, 1:53–2:04 ("I'm not going to give you any of that . . . I'm not giving you nothing.").  Officer Wisecup then requested additional officers at the scene.  Even after the arrival of additional officers, including Officer Wisecup's supervisor, Sergeant Gibson, Watson persisted in refusing to provide identification.  *Id.*, 3:10–3:32.  The officers asked Watson to exit the vehicle, and, again, Watson refused.  *Id.*, 3:30–3:33 ("I'm not stepping out.").  After several requests to exit his vehicle, Watson agreed to do so "under coercion."  *Id.*, 4:10–4:12.  Once Watson exited the vehicle, Officer Wisecup again requested that Watson provide identification, and Watson replied, "I just told you I ain't giving you nothing."  *Id.*, 4:50–4:58.  Because Watson refused to provide identification, the officers placed Watson under arrest and secured him in the rear seat of a patrol vehicle.

After Watson's arrest, Officer Wisecup looked through the window of Watson's vehicle and identified a bag of marijuana.  The officers then unlocked Watson's vehicle, searched the vehicle, and located the bag of marijuana.  The officers also found a metal lockbox with a key in it that contained a loaded firearm.  Watson was subsequently transported to the Clinton County

Sherriff's Office, where he was charged with failing to disclose personal identification, *see* Ohio Rev. Code § 2921.29(A)(1), and possessing marijuana, *see* Ohio Rev. Code § 2925.11(A). Watson was also issued traffic citations for failing to stop at a stop line, *see* Ohio Rev. Code § 4511.13, and driving with a suspended driver's license, *see* Ohio Rev. Code § 4510.111.

A federal grand jury later charged Watson with possession of a firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(1). Watson moved to suppress the evidence seized after Officer Wisecup's traffic stop, arguing that the traffic stop and subsequent search violated his Fourth Amendment rights. The district court denied Watson's motion to suppress. It concluded that the traffic stop did not violate Watson's Fourth Amendment rights because the initial stop was supported by (i) probable cause that Watson drove past the stop bar at a traffic light and (ii) reasonable suspicion that Watson was driving with a suspended driver's license. The district court also concluded that the officers' subsequent search of Watson's vehicle did not violate the Fourth Amendment because the inevitable discovery doctrine applied, based on Wilmington Police Department's towing policy which would have required impoundment and a full inventory search of the vehicle.

Resisting these conclusions, Watson moved for the district court to reconsider its denial of his motion to suppress. The district court denied Watson's motion for reconsideration and reaffirmed its previous conclusion that (i) Officer Wisecup had probable cause to believe that Watson had driven past the stop bar, and that (ii) Officer Wisecup had reasonable suspicion to believe that Watson was driving with a suspended driver's license. As for the search, the district court reaffirmed its conclusion that the inevitable discovery doctrine applied and, in addition, concluded that the inventory exception applied.

To expedite his appeal of the district court's denial of his motion to suppress, Watson agreed to a bench trial based on stipulated facts. After reviewing all elements for the charged offense, the district court found Watson guilty of violating 18 U.S.C. § 922(g)(1) beyond a reasonable doubt.

Watson timely appeals and argues that (i) the district court erred in denying his motion to suppress and that (ii) the district court lacked sufficient evidence to convict him for violating 18 U.S.C. § 922(g)(1).

## II.

When we review a district court's denial of a motion to suppress evidence, we review the district court's factual findings for clear error and legal conclusions de novo. *United States v. Rogers*, 97 F.4th 1038, 1041 (6th Cir. 2024). "Evidence should be viewed in the light most favorable to the district court's conclusions." *United States v. May-Shaw*, 955 F.3d 563, 566 (6th Cir. 2020). We affirm the district court's denial of a motion to suppress evidence "if the district court's conclusion can be justified for any reason." *United States v. Moorehead*, 912 F.3d 963, 966 (6th Cir. 2019) (quoting *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994)).

On appeal, Watson argues that the district court erred in denying his motion to suppress because (i) Officer Wisecup lacked probable cause and reasonable suspicion to conduct a traffic stop, (ii) the officers lacked probable cause to arrest him, and (iii) the officers' warrantless search of his vehicle was per se unreasonable because no warrant exception applies. We address each argument in turn and affirm the district court's denial of Watson's motion to suppress.

## A.

It is well settled that a police officer may conduct a traffic stop when the officer has probable cause to believe that a traffic violation has occurred. *Whren v. United States*, 517 U.S. 806, 810 (1996). "Probable cause is a reasonable ground for belief supported by less than prima facie proof but more than mere suspicion." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). An officer satisfies the requirements of probable cause when, at the moment the officer seeks the arrest, "the facts and circumstances within [the officer's] knowledge and of which [he] had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [individual] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). If an officer has probable cause to believe that a traffic violation has occurred, the stop is permissible "regardless of whether this was the *only basis* or merely one basis for the stop." *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996) (quoting *United States v.*

*Ferguson*, 8 F.3d 385, 391 (6th Cir.1993)).  In this case, the district court held that Officer Wisecup had probable cause to stop Watson for driving past the stop bar at a traffic light, in violation of Ohio Revised Code § 4511.13.  We agree.

Because Officer Wisecup observed Watson drive past a stop bar at a red traffic light, he reasonably believed that Watson had committed a violation of Ohio Revised Code § 4511.13. Section 4511.13 states that "[v]ehicular traffic . . . facing a steady circular red signal indication, unless entering the intersection to make another movement permitted by another signal indication, shall stop at a clearly marked stop line."  During the evidentiary hearing for Watson's motion to suppress evidence, Officer Wisecup testified, "[Watson] did stop at the traffic light, but *he was past the stop bar*."  DE 59, Suppression Tr., Page ID 362 (emphasis added).  Officer Wisecup explained that "[w]hen you come to traffic lights or stop signs, sometimes there's a thick white line that's on the roadway. . . . You're supposed to be behind those.  [Watson] was actually above it."  *Id.*, Page ID 338.  Officer Wisecup's observation of a traffic violation provides sufficient probable cause to authorize a traffic stop.  *See, e.g.*, *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010).  Therefore, Officer Wisecup had "reasonable ground for belief," or probable cause to believe, that a violation of Ohio Revised Code § 4511.13 had occurred.  *Blair*, 524 F.3d at 748.  Under these circumstances, Officer Wisecup was authorized to conduct a traffic stop.  Therefore, we affirm the district court's conclusion that the Officer Wisecup had probable cause to conduct the initial traffic stop.

Although Watson denies that he failed to stop at the stop bar, the totality of circumstances show that Officer Wisecup had probable cause to believe that he did.  *District of Columbia v. Wesby*, 583 U.S. 48, 60 (2018).  A traffic stop is lawful "so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring."  *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993).  Officer Wisecup testified that he observed a traffic violation, and Watson's video footage does not contradict his testimony.  Additionally, the record offers no reason for this court to second-guess the district court's conclusion that Officer Wisecup's testimony was credible.  Because "due regard shall be given to the opportunity of the trial court to judge of the credibility of the witness[]," we conclude that the district court's decision to

credit Officer Wisecup's testimony was not "clearly erroneous." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985).

B.

Whether a warrantless arrest is constitutional turns on whether it was reasonable. *Wesby*, 583 U.S. at 56. "A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence," *id.*, even a "minor crime," *Virginia v. Moore*, 553 U.S. 164, 171 (2008). To determine whether there is probable cause for an arrest, "we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (internal quotation marks and citation omitted). Probable cause is "not a high bar," as it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Wesby*, 583 U.S. at 57 (citation omitted). An arrest is valid so long as there is probable cause for a single violation. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001).

Officer Wisecup had probable cause to arrest Watson for multiple criminal offenses, including (i) driving past the "stop bar," in violation of Ohio Revised Code § 4511.13 and (ii) driving with a suspended driver's license, in violation of Ohio Revised Code § 4510.111.

*First*, because Officer Wisecup observed Watson drive past a "stop bar" at a red traffic light, he had probable cause that Watson had committed a violation of Ohio Revised Code § 4511.13. *See supra* Section II(A). Therefore, it was constitutionally permissible for him to arrest Watson on this basis alone.

*Second*, Officer Wisecup had probable cause that Watson was violating Ohio Revised Code § 4510.111. Three key facts support Officer Wisecup's determination that there was probable cause that Watson was driving with a suspended license: (i) Officer Wisecup observed a vehicle matching Sergeant Meehan's previous description of a vehicle whose driver, identified as Watson, was driving with a suspended license, (ii) Officer Wisecup's license plate searched revealed that the vehicle was registered under the same name Watson had previously provided to Sergeant Meehan, and (iii) Officer Wisecup confirmed with dispatch that Watson's driver's

license was, in fact, suspended. *Avery v. Hoague*, 7 F. App'x 320, 321 (6th Cir. 2001) (holding that there was probable cause to effectuate an arrest of an individual for driving with a suspended driver's license where county records indicated that the individual's license was suspended). Taken together, the cumulative weight of these facts suggests that there was a "substantial probability" Watson was continuing to drive with a suspended license. For this reason, it was constitutionally permissible for Officer Wisecup to arrest Watson.

*Third*, Watson's refusal to provide his driver's license, in violation of Ohio Revised Code § 4507.35, furnished Officer Wisecup with further probable cause to effectuate an arrest.[2] Section § 4507.35 states, "[t]he operator of a motor vehicle shall display the operator's driver's license, or furnish satisfactory proof that the operator has a driver's license, upon demand of any peace officer." Under Ohio Revised Code § 4507.35, when an officer has a reasonable suspicion that an individual is violating the law, the officer is entitled to demand that individual's driver's license. *State v. Merell*, No. 16172, 1997 WL 156597, at *2 (Ohio Ct. App. Mar. 28, 1997). Here, Officer Wisecup had probable cause that Watson was driving with a suspended driver's license, in violation of Ohio Revised Code § 4510.111; therefore, under these circumstances, Officer Wisecup was entitled to demand Watson's driver's license.

After stopping Watson, Officer Wisecup requested that Watson present identification, but Watson refused despite indicating that he had proof of identification on him. DE 58-1, Gov't Ex. 1, 1:46–2:04 ("I have some [identification] . . . I'm not going to give you any of that . . . I'm not giving you nothing."). Later, Officer Wisecup repeated his request for identification, and Watson refused again. *Id.*, 4:50–5:00 ("I just told you I ain't giving you nothing."). Because Watson persistently refused to provide his driver's license, in violation of Ohio Revised Code

---

[2] Although the district court did not address whether Watson's arrest was supported by probable cause nor did it address Ohio Revised Code § 4507.35, we may affirm the district court's denial of a motion to suppress evidence "if the district court's conclusion can be justified for any reason." *Moorehead*, 912 F.3d at 966 (quoting *Pasquarille*, 20 F.3d at 685).

We note that Watson was never cited for violating Ohio Revised Code § 4507.35, but the offense for which there is probable cause to arrest need not be related to or based on the same conduct as the offense for which a defendant is arrested. *Devenpeck v. Alford*, 543 U.S. 146, 153–54 (2004) ("[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."); *see also Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020) ("If the facts known to the officers support probable cause in any form, then an individual may lawfully be arrested.").

§ 4507.35, Officer Wisecup had probable cause to place him under arrest. *Hoover v. Walsh*, 682 F.3d 481, 499–500 (6th Cir. 2012) (concluding the same under a similar Michigan law).

Watson's arrest was reasonable under the Fourth Amendment because Officer Wisecup had probable cause that Watson (i) drove past the "stop bar," in violation of Ohio Revised Code § 4511.13, (ii) was operating a vehicle with a suspended driver's license, in violation of Ohio Revised Code § 4510.111, and (iii) was refusing to provide identification despite Officer Wisecup's repeated requests, in violation of Ohio Revised Code § 4507.35. Probable cause that Watson had committed any one of these three offenses was sufficient to justify his arrest.

Turning to Watson's principal argument, Watson contends that an arrest violates the Fourth Amendment if the underlying state offense does not authorize arrest. According to Watson, because driving with a suspended driver's license is merely an "unclassified misdemeanor" for which an "offender shall not be sentenced to a jail term," Ohio Rev. Code § 4510.111(C)(1), his arrest on this ground was "ultra vires and unlawful," CA6 R. 39, Appellant Br., at 26. But the Supreme Court has expressly rejected this argument in a closely analogous case.

In *Virginia v. Moore*, police officers stopped Moore after hearing over the police radio that he was driving with a suspended driver's license. 553 U.S. 164, 166 (2008). Upon confirming that Moore's license was in fact suspended, the officers arrested him for violating a Virginia law prohibiting individuals from driving on a suspended license. *Id.* at 166–67. During a search incident to arrest, the officers found that Moore was carrying cocaine. *Id.* at 167. But state law did not authorize the officers to arrest Moore for driving on a suspended license. *Id.* at 167. Moore moved to suppress the evidence, arguing that his arrest violated state law and was therefore unconstitutional. *Id.* at 168. The Virginia Supreme Court agreed and suppressed the evidence, but the Supreme Court reversed. *Id.* at 168, 178.

The Supreme Court held that the constitutionality of an arrest under the Fourth Amendment does not depend on whether state law authorizes the arrest. *Id.* at 173 ("[W]hen States go above the Fourth Amendment minimum, the Constitution's protections concerning search and seizure remain the same."). The Supreme Court reaffirmed that an arrest is

constitutionally reasonable under the Fourth Amendment so long as the officer has probable cause to believe that the individual committed even a minor offense in the officer's presence.  *Id.* at 171; *accord United States v. Whitlow*, 134 F.4th 914, 921 (6th Cir. 2025) ("[E]ven when state law prohibits a specific type of enforcement, that doesn't appear to affect the Fourth Amendment inquiry.").  Consistent with the Supreme Court's holding in *Moore*, Watson's state law challenge to his arrest fails.  We conclude that Officer Wisecup's reasonable probable cause determination that Watson had committed at least one criminal offense provided a sufficient basis for his arrest.

C.

The officers' subsequent warrantless search of Watson's vehicle did not violate the Fourth Amendment because the search was permissible under the automobile exception.  Under the automobile exception to the Fourth Amendment's warrant requirement, officers may conduct a warrantless search of a vehicle if they have probable cause to believe that the vehicle contains evidence of a crime.  *California v. Acevedo*, 500 U.S. 565, 580 (1991); *United States v. Peake-Wright*, 126 F.4th 432, 438 (6th Cir. 2025).

Officer Wisecup had probable cause to believe that Watson's vehicle contained evidence of illegal contraband.  Looking through the window of Watson's vehicle, Wisecup identified a bag of marijuana in the center console.  At the time of Watson's arrest, it was a crime to possess marijuana for non-medical purposes under Ohio law.  *See* Ohio Rev. Code §§ 2925.11, 3796.01. Officer Wisecup observed that the bag of marijuana lacked the ordinary, and statutorily required, packaging for medical marijuana.  *See* Ohio Admin. Code § 3796:7-2-05(G) (requiring patients to store medical marijuana in the "original dispensing package with an unaltered dispensary label" or in the "container provided by a dispensary").  Officer Wisecup consulted with another police officer, and they agreed that what they had identified was in fact marijuana.  Based on their collective training and experience, the police officers reasonably believed that the marijuana was not being used for medical purposes and was, instead, illegal contraband. *Whitlow*, 134 F.4th at 923.  Because there was a substantial probability that Watson possessed illegal contraband in violation of Ohio law, the officers were permitted to search the entirety of Watson's vehicle, including any containers found inside the vehicle, without a warrant. *Acevedo*, 500 U.S. at 570.  That the officers inadvertently discovered a loaded handgun inside a

metal lock box is beside the point and does not affect the underlying validity of the search. *United States v. Ross*, 456 U.S. 798, 824 (1982) (clarifying that the scope of a search under the automobile exception "is not defined by the nature of the container in which the contraband is secreted . . . [but] by the object of the search and the places in which there is probable cause to believe that it may be found."). Because the metal lockbox may have "conceal[ed] the object of the search," *id.* at 825, the officers were permitted to open it based on their probable cause determination that the vehicle contained marijuana. We conclude that the search of Watson's vehicle was permissible under the automobile exception. Accordingly, we need not reach whether the search was justified on other grounds.

In sum, the district court did not err in denying Watson's motion to suppress evidence because (i) the initial traffic stop was supported by probable cause, (ii) Watson's arrest was supported by probable cause, and (iii) the search of Watson's vehicle was permissible under the automobile exception. We affirm the district court's denial of Watson's motion to suppress evidence.

### III.

Finally, Watson argues that the district court lacked sufficient evidence to convict him for violating 18 U.S.C. § 922(g)(1). According to Watson, his conviction must be reversed because the district court's singular reliance on a stipulation between the parties cannot provide sufficient factual support for a finding of guilt. When we review a defendant's challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Although the government bears the burden of proving beyond a reasonable doubt every element of a charged offense, *In re Winship*, 397 U.S. 358, 364 (1970), when a criminal defendant stipulates to an essential element of a charged offense, the defendant "waives his right to put the government to its proof of that element," *United States v. Harrison*, 204 F.3d 236, 240 (D.C. Cir. 2000).

Watson's factual stipulation to all essential elements of his felon-in-possession charge constitutes a waiver of his right to challenge the sufficiency of the evidence for his conviction. *Id.* at 242–43. To prove guilt under § 922(g)(1), the government was otherwise required prove beyond a reasonable doubt that: (i) the defendant had a prior felony conviction, (ii) the defendant knew that he had a prior felony conviction, (iii) the defendant thereafter knowingly possessed the firearm specified in the indictment, and (iv) the firearm had traveled in interstate commerce. *See* § 922(g)(1); *Rehaif v. United States*, 588 U.S. 225, 230 (2019). But Watson stipulated to each element. The parties jointly stipulated that:

> On December 5, 2020, in the Southern District of Ohio, JTTONALI ONE EYE EL BEY ("Jtton Watson"), knowing he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm and ammunition, that is, a 9mm Taurus, PTl11 Pro, bearing serial number TAP76805 ("firearm") and ten rounds of 9mm ammunition. The firearm was shipped and transported in interstate and foreign commerce before JTTONALI ONE EYE EL BEY ("Jtton Watson") possessed it as the firearm was manufactured in Brazil.

DE 100, Stipulation, Page ID 697. Moreover, the stipulation states:

> It is further stipulated and agreed that this Stipulation may be introduced into evidence as an exhibit, and that *the facts herein stipulated have the same status, dignity, and effect as the undisputed testimony of credible witnesses.*

*Id.* (emphasis added). After confirming that Watson's waiver of his right to a jury trial was knowing and voluntary, the district court asked Watson whether he understood that, by entering into the stipulation, he was agreeing to all of the elements of the offense in the case. Watson replied, "Yes." DE 123, Bench Trial Tr., Page ID 935. Thus, Watson's stipulation explicitly relieved the government of its burden to prove the stipulated factual elements. If this were not the case, the efficiency that a stipulation affords would be lost to the defendant, the government, and the courts. Although Watson argues that Rule 11(b)(3) of the Federal Rules of Criminal Procedure requires that the district court "determine that there is a factual basis for the [guilty plea]," Watson did not enter a guilty plea. Thus, Rule 11, by its terms, does not apply in this case. The district court did not err in accepting Watson's stipulation to all four elements for felony possession of a firearm under 18 U.S.C. § 922(g)(1).

We note that this court has encouraged district courts to conduct a colloquy, in compliance with Rule 11, when a defendant stipulates to each element of an offense. *Witherspoon v. United States*, 633 F.2d 1247, 1252 (6th Cir. 1980). In *Witherspoon*, a defendant pled "not guilty" of receiving and possessing a firearm while a felon, even though he had stipulated to all elements of the offense. *Id.* at 1248. The sole issue on appeal was whether the district court was required to comply with Rule 11. We held that Rule 11 does not apply—even when a defendant stipulates to all elements of an offense—when the defendant enters a "not guilty" plea. *Id.* at 1251 ("[W]e do not wish to lay down a rule which would require the full application of Rule 11 on every occasion in a contested case where a stipulation of one or more facts is tendered."). Although we expressed that district courts should engage with some of the procedural safeguards set out in subsections (b) and (c) of Rule 11 to ensure that a defendant's stipulation was knowing and voluntary, we affirmed the district court's ultimate conviction, even though the district court had not complied with all of the Rule 11 provisions. *Id.* at 1252.

Like the defendant in *Witherspoon*, Watson did not enter a guilty plea and, therefore, the district court was not required to comply with Rule 11. Nevertheless, before accepting Watson's stipulation, the district court conducted an extensive colloquy that satisfied several of Rule 11's requirements. Specifically, the court informed Watson of the following:

(1) He could be charged with perjury or making a false statement while under oath, *see* Rule 11(b)(1)(A);

(2) He had the right to plead not guilty and persist in that plea, *see* Rule 11(b)(1)(B);

(3) He had a right to a trial by jury, *see* Rule 11(b)(1)(C);

(4) He had a right to counsel at trial and every other stage of the proceeding, *see* Rule 11(b)(1)(D);

(5) He had a right to confront and cross-examine all adverse witnesses, *see* Rule 11(b)(1)(E);

(6) He had the right to be protected from self-incrimination, to testify and present evidence, and compel the attendance of witnesses, *see* Rule 11(b)(1)(F);

(7) The nature of the charge against him, *see* Rule 11(b)(1)(G);

(8) The maximum possible penalty, including imprisonment, fine, and term of supervised release, *see* Rule 11(b)(1)(H),

(9)  The applicable forfeiture in the case, *see* Rule 11(b)(1)(J); and

(10) The court's obligation to impose a special assessment, *see* Rule 11(b)(1)(L).

The court addressed each item in turn, and Watson responded either "Yes" or "I affirm" to each, confirming his understanding of the consequences of engaging in a stipulated bench trial.  In a guilty plea context, a defendant's simple yes-or-no responses to whether their plea was voluntary are sufficient to confirm understanding.  *United States v. Lalonde*, 509 F.3d 750, 761 (6th Cir. 2007).  The same principle applies when a district court seeks to confirm that a defendant understands the consequences of stipulating to all elements of a charged offense.

Accordingly, we conclude that the district court took appropriate and careful steps to confirm that Watson's stipulation was knowing and voluntary.  Under these circumstances, the district court committed no error—much less clear error—in accepting Watson's stipulation to all four elements of felony possession of a firearm under 18 U.S.C. § 922(g)(1).

IV.

The district court did not err in denying Watson's motion to suppress evidence because (i) the initial traffic stop was supported by probable cause, (ii) Watson's arrest was supported by probable cause, and (iii) the search of Watson's vehicle was permissible under the automobile exception.  The district court also did not err in accepting Watson's stipulation to all four elements of felony possession of a firearm under 18 U.S.C. § 922(g)(1).  Accordingly, we affirm.