NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0046n.06

No. 24-3981

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 23, 2026
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| ERIC JASON CLARK, | ) |
| Defendant-Appellant. | ) |
| | ) |
| | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

Before: GIBBONS, LARSEN, and MURPHY, Circuit Judges.

LARSEN, Circuit Judge. After a bench trial, the district court convicted Eric Clark of one drug conspiracy count and sentenced him to 200 months' imprisonment. Clark challenges the denial of two pretrial suppression motions and the reasonableness of his sentence. Seeing no errors, we AFFIRM.

I.

In May 2021, agents from the Drug Enforcement Administration (DEA) learned through a confidential source (CS) that an individual, later identified as Eric Clark, wanted to purchase a large quantity of cocaine. The agents learned that Clark was on federal supervised release for attempted possession with intent to distribute cocaine at the time. An undercover agent, posing as a supplier, contacted Clark and introduced him to a second CS who would be his Cincinnati contact for future dealings. Over the next several months, the Cincinnati CS and Clark had several recorded conversations in which they discussed Clark's interest in buying large quantities of drugs, preferably cocaine but also fentanyl. Agents identified two residences that Clark frequented: an

apartment in downtown Cincinnati (the Freedom Way apartment), and a home in Fairfield, Ohio, which investigators learned was Clark's primary residence.

On August 5, 2021, the CS and Clark met, and Clark agreed that he would pay the CS $60,000 on August 11, in exchange for ten kilograms of cocaine. On August 11, agents observed Clark entering and exiting the Freedom Way apartment. No purchase happened on that day, but Clark told the CS that he was working on getting the money to buy the drugs. Over the next two weeks, agents continued to surveil Clark, who entered and exited the Freedom Way apartment thirty times over thirteen days.

On August 25, 2021, agents again surveilled Clark. They watched him make nine brief stops, including a visit to the home of another drug investigation target; agents had observed Clark meet with that individual during a prior suspected drug transaction. Agents also observed co-defendant Brittany Crenshaw with Clark at the Freedom Way apartment, carrying what appeared to be a black backpack. Clark and Crenshaw drove to another location after he left the Freedom Way apartment, where he stayed only a few minutes. Their suspicions aroused by the frequency, duration, and location of the stops, as well as the many communications between the CS and Clark, agents decided to stop Clark to investigate.

Trooper Doebrich, an Ohio State Patrol Trooper who had been assigned as a DEA Task Force Officer and was aware of the investigation, stopped Clark after observing multiple traffic and vehicle infractions. During the stop, a K-9 conducted an open-air sniff of Clark's truck and gave a positive alert for narcotics. Agents searched the vehicle and found five kilograms of suspected cocaine or fentanyl and a large quantity of cash.

DEA agents obtained search warrants for the Freedom Way apartment and the Fairfield residence. They found two handguns, a small bag of fentanyl, and a large amount of cash at the

Fairfield residence, and three kilograms each of fentanyl and cocaine, as well as scales, a money counter, and packaging materials at the Freedom Way apartment.

A grand jury indicted Clark on one count of conspiracy to possess controlled substances with intent to distribute and one count of possession of a firearm by a felon. Clark moved to suppress the evidence obtained from his truck and the Freedom Way apartment. After a hearing, the district court denied Clark's motions. Clark's case proceeded to a bench trial. The district court found Clark guilty on the drug count but not guilty on the firearm count. For the drug count, the court found a drug quantity of over 5 kilograms of cocaine and over 400 grams of fentanyl.

The PSR calculated Clark's Guidelines range at 188 to 235 months. Clark challenged his criminal history score, arguing that it erroneously included a 2002 state drug trafficking conviction. The district court disagreed and adopted the Guidelines range as set forth in the PSR. The court then sentenced Clark to 200 months' imprisonment. Clark now appeals.

II.

*Suppression Motion*. Clark challenges the denial of his motions to suppress the evidence from the traffic stop and the search of the Freedom Way apartment. We review the lower court's "factual findings for clear error and its legal conclusions de novo." *United States v. Santiago*, 139 F.4th 570, 573 (6th Cir. 2025) (citation modified). "Because the court denied the motion to suppress, we consider the evidence in the light most favorable to the government." *Id.* (citation modified).

Clark first argues that the district court erred by not suppressing evidence stemming from the search of his truck. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons . . . and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is a seizure "subject to the constitutional imperative that it not be 'unreasonable'

under the circumstances." *Whren v. United States*, 517 U.S. 806, 810 (1996). "If an officer has probable cause to believe that a traffic violation has occurred, the stop is permissible regardless of whether this was the *only basis* or merely one basis for the stop." *United States v. Watson*, 142 F.4th 872, 878 (6th Cir. 2025) (alteration in original) (citation modified). The reasonableness of a stop does not "depend[] on the actual motivations of the individual officers involved." *Whren*, 517 U.S. at 813.

Prior to the stop, Doebrich observed Clark commit lane and turn signal violations and believed that the windows on Clark's vehicle were tinted illegally. After making the stop, Doebrich informed Clark of the reasons for the stop and asked for his registration and insurance. Co-defendant Brittany Crenshaw was in the passenger seat. Both Clark and Crenshaw searched for the documents but never actually produced them. Doebrich asked Clark to step out of the vehicle. Clark consented to a search of his person. Doebrich then had him sit in the patrol car while Doebrich ran his information. Doebrich returned to the vehicle and spoke with Crenshaw. Crenshaw appeared nervous and questioned Doebrich about the stop; Doebrich asked her to exit the vehicle and sit on the curb. Doebrich then returned to his vehicle and prepared a citation for a window tint violation. Clark finds no fault in these actions. Nor could he, as they were all tied to the potential traffic and vehicle violations and thus reasonable. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015).

When Doebrich returned to the patrol car to prepare the window tint citation, he radioed for a K-9 unit. Clark argues that this impermissibly extended the stop because, at that point, Doebrich had all the information he needed to cite Clark for the vehicle and traffic violations.

It is true that "[a]uthority for [a] seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.* A lawful stop "can become unlawful if it

is prolonged beyond the time reasonably required to complete the mission of issuing a . . . ticket." *Id.* at 354–55 (citation modified). But it's not clear that the purpose of Clark's traffic stop was completed at that point. Neither Crenshaw nor Clark had produced proof of insurance and Doebrich testified that he could not have let them leave without such proof; instead, he would have had to impound and inventory the car.

Alternatively, an officer may continue a stop, including by calling for a K-9, based on "an independent reasonable suspicion of unlawful activity beyond the traffic violation." *United States v. Whitley*, 34 F.4th 522, 532 (6th Cir. 2022); *see United States v. Salas*, 820 F. App'x 405, 411 (6th Cir. 2020) ("An ordinary traffic stop . . . cannot be extended to accommodate a dog sniff without reasonable suspicion of criminal activity."). Here, Doebrich's suspicions reasonably extended well beyond the traffic and vehicle violations. He knew that Clark was on supervised release for a drug offense. He was aware of the DEA's investigation of Clark and the surveillance of him that day; he testified that based on his training and experience in narcotics, Clark's movements prior to the stop were suspicious. And those suspicions informed the decision to stop Clark to investigate.

Then, during the stop, Doebrich witnessed Crenshaw acting frantic and nervous. Crenshaw told Doebrich that they had just come from dropping off her kids, but Doebrich knew, based on the surveillance during the day, that this was not true. Crenshaw and Clark also told Doebrich conflicting stories about their travels that day, and Clark's stories were implausible. Doebrich noticed that Clark had more than one cell phone on him, which he thought could be consistent with drug trafficking. And he saw multiple bags in the backseat of the vehicle, including a box with the name of a person who was not in the vehicle; when asked if she was the person whose name was on the box, Crenshaw said no. Doebrich testified that this also could be evidence of drug

trafficking. Add it all up, and Doebrich had reasonable, independent suspicion to call for a K-9 unit and continue the stop until it arrived. *Whitley*, 34 F.4th at 532. The district court didn't err by denying Clark's motion to suppress the evidence from the traffic stop.

That conclusion also dooms Clark's challenge to the search of the Freedom Way apartment. He argues only that the illegal traffic stop tainted the subsequent search of the apartment, thus requiring suppression of the "fruit of the poisonous tree." *See United States v. Elmore*, 18 F.4th 193, 199–200 (6th Cir. 2021) (explaining the doctrine). Because there was no error regarding the vehicle search, there was no taint, and the district court didn't err by denying Clark's motion.

*Procedural Reasonableness*. Clark next challenges the procedural reasonableness of his sentence. To craft a procedurally reasonable sentence, "[t]he court must properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). We review for an abuse of discretion. *Id.*

Clark argues that the district court erroneously calculated the Guidelines range because it relied on evidence obtained from the allegedly unconstitutional searches of the vehicle and the Freedom Way apartment. But that argument fails because as previously explained, Clark's challenges to the searches are meritless.

Clark also argues that the district court erred by counting a 2002 state conviction for drug trafficking in his criminal history score. A district court must add three points to a defendant's criminal history score "for each prior sentence of imprisonment exceeding one year and one month." U.S.S.G § 4A1.1(a). There is a time limitation, however: "[a] sentence imposed more than fifteen years prior to the defendant's commencement of the instant offense is not counted

unless the defendant's incarceration extended into this fifteen-year period." *Id.* § 4A1.1 cmt. n.1; *see also id.* § 4A1.2(e)(1).

Clark was convicted in state court of trafficking cocaine in January 2002. He remained in prison for the offense until July 24, 2006. And the district court didn't clearly err when it concluded that Clark's involvement in the instant offense began on or about May 2021, when the Cincinnati CS met with Clark and Clark indicated his desire to purchase drugs. Thus, Clark's incarceration for the state court offense "extended into th[e] fifteen-year period." *Id.* § 4A1.1 cmt. n.1. The district court didn't err by including the state court conviction when calculating Clark's criminal history score.

* * *

We AFFIRM.