RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name:

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

ANDRE WHITLOW,

        *Defendant-Appellant*.

> No. 24-3114

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:22-cr-00620-1—John R. Adams, District Judge.

Argued: March 18, 2025

Decided and Filed:

Before: THAPAR, BUSH, and MURPHY, Circuit Judges.

_____

### COUNSEL

_____

**ON BRIEF:** Joseph V. Pagano, Rocky River, Ohio, for Appellant. Poula E. Hanna, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

### OPINION

_____

THAPAR, Circuit Judge. During a late-night traffic stop, officers found two firearms in Andre Whitlow's car. Since Whitlow was a felon, it was illegal for him to have the guns. At trial, a jury found him guilty of being a felon in possession. He appeals, challenging various aspects of the traffic stop and conviction. We affirm.

I.

Around 2:30 in the morning, Andre Whitlow was driving his mother's car. Officer Thomas Kazimer observed Whitlow driving and decided to run a registration check on his vehicle. The officer learned that the car's license plate was expired and pulled Whitlow over.

As Whitlow was gathering his license, registration, and insurance, Officer Kazimer asked if Whitlow had anything illegal in the vehicle. Whitlow said, "no." But Officer Kazimer observed loose bits of marijuana scattered across the gear shifter in the center console of the car. So, he followed up his first question by asking Whitlow if he had any marijuana. Whitlow shook his head no.

Based on his observations, Officer Kazimer decided to search the car. But before he started searching, he ordered Whitlow out of the car and patted him down. While searching Whitlow, Officer Kazimer found a bag of marijuana. Whitlow then acknowledged that there was marijuana in the car, but he told Officer Kazimer that he had a "weed license." R. 30, Pg. ID 107.

After a backup officer arrived, the two officers searched the car. As one officer was searching the front glove compartment, the compartment suddenly fell out. Two firearms were hidden in a cavity behind the glove compartment: a tan Glock handgun with an extended magazine and a Ruger handgun. The officers then arrested Whitlow.

Because Whitlow had two previous felonies, the government charged him with being a felon in possession. *See* 18 U.S.C. §§ 922(g)(1), 924(a)(2). After a two-day trial, a jury found him guilty. The court sentenced Whitlow to 120 months in prison.

II.

Whitlow brings several challenges on appeal. He argues that (1) Officer Kazimer lacked probable cause to search his car; (2) the evidence was insufficient to convict him; (3) the district court erroneously admitted various pieces of evidence; (4) the district court allowed improper testimony; and (5) his sentence was procedurally unreasonable. Because none of Whitlow's challenges succeeds, we affirm his conviction and sentence.

A.

Whitlow first challenges the legality of the car search.  Before trial, Whitlow moved to suppress the firearms found during the search.  The district court denied his motion.  On appeal, we review the district court's factual findings for clear error and legal conclusions de novo. *United States v. Rogers*, 97 F.4th 1038, 1041 (6th Cir. 2024).  We affirm the lower court's denial of a suppression motion if "any reason" justifies the court's conclusion.  *Id.* (citation omitted).

The Fourth Amendment generally requires police to obtain a search warrant before performing a search.  But law enforcement officers may search a vehicle without a warrant if they have probable cause to believe it contains evidence of a crime.  *See United States v. Galaviz*, 645 F.3d 347, 355 (6th Cir. 2011).  Probable cause is not a difficult standard to meet; it only requires a "fair probability" that an officer will find contraband or evidence of a crime. *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024) (en banc) (quotation omitted).  And in determining whether a fair probability exists, we look at the totality of the circumstances "through the common-sense lens of ordinary people, not the technical lens of trained lawyers." *United States v. Sheckles*, 996 F.3d 330, 337 (6th Cir. 2021).

Here, the government argues that Officer Kazimer had probable cause that Whitlow's marijuana possession violated both federal and state law.

1.

Whether Officer Kazimer had probable cause of a federal-law violation implicates two separate issues.  First, did Officer Kazimer have probable cause to believe that Whitlow violated federal law?  And second, did Officer Kazimer—a state officer—have the authority to search Whitlow's car based on this federal-law violation?  The answer to the first question is yes.  The answer to the second question is a bit tricker, but it's also yes in these circumstances.

a.

Officer Kazimer had probable cause of a federal-law violation.  This point is straightforward:  the officer saw "loose marijuana scattered across the gear shifter in the center console."  R. 30, Pg. ID 105.  That was enough for Officer Kazimer to conclude that Whitlow

was violating the Controlled Substances Act, which prohibits marijuana possession. *See* 21 U.S.C. § 844(a).

b.

The second question is not as straightforward: Do state officials have the authority to conduct a search based on probable cause of a violation of federal law? The Supreme Court has never considered the issue, and lower courts are inconsistent. *See* Orin S. Kerr, *Cross-Enforcement of the Fourth Amendment*, 132 Harv. L. Rev. 471, 495 (2018).[1]

The answer to this question potentially varies depending on whether (i) federal law authorizes or is silent on state-officer enforcement; (ii) state law forbids state-officer enforcement; or (iii) federal law forbids state-officer enforcement. Here, both federal and Ohio law appear silent on whether a state officer may enforce the Controlled Substances Act.[2]

When federal law authorizes state-officer enforcement or is otherwise silent, the Fourth Amendment does not prevent state officers from enforcing federal law. This makes sense for several reasons.

*First*, most federal law-enforcement agencies are of recent vintage. *Id.* at 530. That is why historically enforcement of federal law was often left to state officials. *Id.* For example, state officials played a major role in enforcing federal laws during Prohibition. *See, e.g.*, *Marsh v. United States*, 29 F.2d 172, 173 (2d Cir. 1928) (Learned Hand, J.) ("[I]t has been a universal practice of police officers in New York to arrest for federal crimes.").

---

[1]Professor Kerr divides the lower courts' approaches into five buckets. Courts have variously concluded that state officers can stop someone for probable cause of a federal-law violation: (1) if state law authorizes it; (2) even if state law prohibits it; (3) if either state or federal law permits it; (4) unless state or federal law prohibits it; or (5) only if it's authorized by federal law. Kerr, *Cross-Enforcement*, *supra*, at 479–87.

[2]To be sure, federal spending legislation prohibits the Department of Justice from using funds to stop states "from implementing their own laws that authorize the use, distribution, possession, or cultivation of medical marijuana." Consolidated Appropriations Act, 2021, Pub. L. No. 116-260, § 531 (2020); *see also* Consolidated Appropriations Act, 2024, Pub. L. No 118-42, § 531 (2024). But this legislation doesn't proscribe the search here. For one, it prohibits the DOJ from using federal funds. It doesn't limit the enforcement authority of state officials like Officer Kazimer. Also, Whitlow's federal prosecution is for an altogether different offense—being a felon in possession. The DOJ's decision to spend funds on that prosecution doesn't prevent *Ohio* from implementing its medical marijuana regime.

What's more, one scholar has noted that at the time of the Founding, Federalists and Anti-Federalists alike thought that the federal government could affirmatively "make use of the State officers" to enforce federal law. *See* Wesley J. Campbell, *Commandeering and Constitutional Change*, 122 Yale L.J. 1104, 1106 (2013) (quoting *The Federalist No. 36*, at 227–28 (Alexander Hamilton) (Jacob E. Cooke ed., 1961)); *see also id.* at 1139 ("Anti-Federalists generally preferred state administration of federal laws."). And although the federal government's conscription of state officers might amount to unconstitutional commandeering, *Printz v. United States*, 521 U.S. 898, 925 (1997), the history supports state officers *voluntarily* enforcing federal law.

*Second*, the structure of the Constitution also supports state officers enforcing federal law. As Judge Learned Hand observed in *Marsh*, the Supremacy Clause "makes all laws of the United States the supreme law of the land," and thus, it's no different for a state officer to enforce federal law "as one of its own statutes." 29 F.2d at 174. So, the fact that federal laws apply within the states supports the authority of state officers to enforce those laws to the same extent as state law. Thoughtful scholars agree. *See* Kerr, *Cross-Enforcement*, *supra*, at 529–30; *see also* F. Andrew Hessick, *Quasi-Sovereign Standing*, 94 Notre Dame L. Rev. 1927, 1939 (2019).

*Third*, courts routinely allow state-officer enforcement of federal law in the absence of affirmative federal authorization. *See e.g.*, *United States v. Steinman*, 130 F.4th 693, 712–13 (9th Cir. 2025) (upholding seizure of vehicle by state officer on grounds that he had probable cause of evidence of federal crime); *United States v. Smith*, 899 F.2d 116, 118 (1st Cir. 1990) (Breyer, J.) (rejecting defendant's argument that state officer could not seize weapon in plain view pursuant to federal statute because "we are not aware of any state or federal law that *prohibits* state police" from doing so (emphasis in original)).

*Fourth*, while the parties don't identify any Ohio law that would prohibit the search here, state law is likely irrelevant to whether a Fourth Amendment violation has occurred. Indeed, when state law is silent as to what its officers may do, the Supreme Court has made clear that officers may perform a search consistent with the Constitution. For example, in *Cooper v. California*, the Supreme Court upheld a search without specific state authorization, reasoning

that "a search not expressly authorized by state law" can still be "constitutionally reasonable." 386 U.S. 58, 61 (1967).  And in *California v. Greenwood*, the Supreme Court reiterated that a search's reasonableness was not dependent on state law.  486 U.S. 35, 43 (1988).  Finally, in the seizure context, the Court has upheld a seizure even though it violated local police rules.  *See Whren v. United States*, 517 U.S. 806, 815 (1996).

And even when state law prohibits a specific type of enforcement, that doesn't appear to affect the Fourth Amendment inquiry.  In *Virginia v. Moore*, the officers arrested the defendant for driving with a suspended license.  553 U.S. 164, 166–67 (2008).  In most circumstances, including the one at issue, Virginia law did not permit officers to arrest someone for driving with a suspended license.  *Id.*  So, the Virginia Supreme Court suppressed the crack cocaine that officers found in their search incident to arrest.  *Id.* at 168.  The Supreme Court reversed.  *Id.* at 178.  Importantly, the Court pointed out that state law was irrelevant to the Fourth Amendment question.  *Id.* at 172.  The Fourth Amendment question doesn't change based on the "trivialities" of state law.  *Id.* (citation omitted).  Rather, the question remains constant:  is there probable cause for the search or arrest even if it is for a minor crime.  *Id.* at 171.  Any additional protections a state provides are treated "exclusively as matters of state law."  *Id.*

Taking its lead from *Moore*, the Tenth Circuit found it "irrelevant" for Fourth Amendment purposes whether state law authorized an officer to conduct an arrest for a federal-law violation.  *United States v. Turner*, 553 F.3d 1337, 1346 (10th Cir. 2009).  In short, the particularities of state law don't seem relevant to this Fourth Amendment question.[3]

Thus, the relevant question in this case is the ordinary Fourth Amendment question: whether the officer had probable cause to believe that the search would turn up fruits of the crime.  During the stop, Officer Kazimer observed "loose marijuana scattered across the gear

---

[3]The most difficult question seems to be what happens when federal law specifically prohibits state enforcement.  Of course, extrapolating from the logic of *Moore*, one could argue that once the federal government has said that certain conduct is illegal, the specified enforcement mechanism is of no moment to the Fourth Amendment.  *See Moore*, 553 U.S. at 169 ("None of the early Fourth Amendment cases that scholars have identified sought to base a constitutional claim on a violation of a state *or federal* statute concerning arrest." (emphasis added)).  But at least one prominent Fourth Amendment scholar thinks otherwise—that is, that a prohibition in federal law would preclude enforcement by state officers.  *See* Kerr, *Cross-Enforcement*, *supra*, at 525–31.  Regardless, the search here doesn't fall into the category of federal laws that bars state-officer enforcement.  So we need not decide this question.

shifter in the center console" of Whitlow's car.  R. 30, Pg. ID 105.  Based on Officer Kazimer's approximately eight years of experience in law enforcement, the substance was "100 percent marijuana."  *Id.* at Pg. ID 92, 119.  Thus, it was "immediately apparent" that the car could contain contraband.  *United States v. Loines*, 56 F.4th 1099, 1106 (6th Cir. 2023) (quotation omitted).  That was enough to establish probable cause to search the vehicle.  Just as "any amount of illegal contraband" can establish probable cause "to seize it," so too can any amount of illegal contraband establish probable cause to conduct a warrantless search of a vehicle. *Sheckles*, 996 F.3d at 341. Thus, the resulting search was constitutionally reasonable.  *Cf. Moore*, 553 U.S. at 171 ("In a long line of cases, we have said that when an officer has probable cause to believe a person committed even a minor crime in his presence, the balancing of private and public interests is not in doubt. The arrest is constitutionally reasonable.").

2.

Officer Kazimer also had probable cause of a violation of Ohio's marijuana laws.  At the time of the stop, marijuana was illegal under Ohio law, "save for stringently regulated medical usage."  *United States v. McCallister*, 39 F.4th 368, 371 (6th Cir. 2022) (citing Ohio Rev. Code Ann. §§ 2925.11, 3796.01–.31).

In response, Whitlow argues that he had a license to carry medical marijuana, so Officer Kazimer could not have known whether the marijuana he saw was illegal.  But there were multiple reasons for Officer Kazimer to conclude that there was probable cause that the marijuana was illegal.

First, the marijuana residue itself suggested illegal use.  To Officer Kazimer, the substance looked like "dried marijuana that often falls from drug paraphernalia or when people are rolling marijuana blunts or using it inside vehicles."  R. 30, Pg. ID 105.  And officers can have probable cause that a suspect's possession of marijuana is illegal even if marijuana may be legal in some instances.

In *United States v. Pointer*, for example, the "sight of marijuana in the car" contributed to a finding of probable cause.  No. 22-1082, 2022 WL 17820539, at *9 (6th Cir. Dec. 20, 2022).  There, the marijuana contributed to probable cause that the suspect was driving under the

influence.  *Id.* at \*9 n.10.  Here, the loose, scattered marijuana suggested illegal drug use.  It therefore wasn't unreasonable for Officer Kazimer to conclude that the marijuana was evidence of a crime.

Ohio courts agree that evidence of marijuana that could be legal medical marijuana can still provide probable cause of a state-law violation.  *See State v. Wright*, 243 N.E.3d 782, 789 (Ohio Ct. App. 2024) (holding that a dog sniff can contribute to probable cause even though Ohio legalized forms of marijuana); *see also State v. Burke*, No. 29256, 2022 WL 2286933, at \*6–7 (Ohio Ct. App. June 24, 2022) (emphasizing that officer's observation of marijuana contributed to probable-cause determination despite legalization).  To be sure, Ohio courts' probable-cause determinations don't bind us.  But they're relevant to determining whether the sight of marijuana in Whitlow's vehicle created probable cause of a state-law violation.  *See United States v. Jackson*, 103 F.4th 483, 489–90 (7th Cir. 2024) (finding that Illinois courts' interpretation of Illinois marijuana laws "support[ed]" the court's probable-cause determination).

In addition, Whitlow appeared to be violating Ohio's administrative regulations on the possession of medical marijuana, which further supports Officer Kazimer's determination that Whitlow possessed contraband.  Ohio requires patients to store medical marijuana in the "original dispensing package with an unaltered dispensary label" or in the "container provided by a dispensary."  Ohio Admin. Code § 3796:7-2-05(G).  But the smattering of marijuana on the car's center console suggested that Whitlow hadn't obtained his marijuana legally; if he had, it would've been in the proper packaging.  Ohio also mandates that patients store medical marijuana in a "secure location" to prevent unauthorized access.  *Id.* at § 3796:7-2-05(E).  Whitlow's failure to comply with this regulation also suggests that he didn't possess the marijuana legally.

Whitlow, for his part, responds that violations of Ohio's medical marijuana regime aren't criminal and therefore he couldn't have possessed contraband.  But the fact that Whitlow seemed to be disobeying Ohio regulations could've factored into Officer Kazimer's assessment that the vehicle had a "fair probability" of containing something illegal.  *See Jackson*, 103 F.4th at 489 (finding that lack of compliance with state laws on packaging and use of marijuana provided probable cause).

Further, Whitlow lied to Officer Kazimer when the officer asked whether Whitlow had marijuana in the car.  Since the officer had already seen the marijuana, this apparent lie contributed to the probable cause calculation. Indeed, we have held that a "false answer in response to questions by the police based on the police officer's personal knowledge may constitute probable cause." *United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991) (citation omitted).

In the end, the totality of the circumstances indicated a fair probability that Whitlow had contraband in violation of Ohio law.  *Florida v. Harris*, 568 U.S. 237, 244 (2013).  Officer Kazimer saw marijuana, which was illegal in most cases, in Whitlow's car.  The marijuana was also in a form that suggested illegal use.  And when Whitlow indicated that he didn't have any marijuana, Officer Kazimer knew Whitlow lied.  In sum, the facts known to Officer Kazimer at the time created a "fair probability" of contraband in Whitlow's vehicle under Ohio law.  Thus, the court below correctly denied Whitlow's motion to suppress the evidence found from that search.[4]

B.

Next, Whitlow argues there was insufficient evidence to convict him.  In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the government and ask whether "*any* rational trier of fact" could have found Whitlow guilty.  *United States v. Aldridge*, 98 F.4th 787, 793 (6th Cir. 2024) (citation omitted) (emphasis in original).

The only contested element of the felon-in-possession charge is whether Whitlow knowingly possessed a firearm.  Because the officer found guns in Whitlow's car, the government argued that he constructively possessed them.  Constructive possession exists if a person "knowingly ha[d] the power and the intention at a given time to exercise dominion and control over an object." *United States v. Crump*, 65 F.4th 287, 295 (6th Cir. 2023) (citation

---

[4]Whitlow also challenges the warrantless search of his person.  But we need not address this argument. Regardless of the fruits of the pat-down (a bag of marijuana), Officer Kazimer still had probable cause to search Whitlow's car.  The marijuana found during the pat-down also didn't factor into the decision to search the car; Officer Kazimer had already decided to conduct the search before he patted down Whitlow.

omitted).  And when someone is near the item, as Whitlow was, the government only needs to present minimal evidence to tie him to it.  *Id.* (citation omitted).

Here, the evidence is more than sufficient to show that Whitlow constructively possessed a firearm.  One of the weapons recovered from Whitlow's car was a tan Glock 19X handgun with an extended magazine.  At trial, the government introduced two photographs from Whitlow's Instagram that depicted him carrying what two law enforcement witnesses identified as a tan Glock 19X with an extended magazine.  *Cf. United States v. Farrad*, 895 F.3d 859, 875 (6th Cir. 2018) (picture alone of defendant holding firearm is enough to convict for felon in possession).  And the government introduced evidence that this particular gun was quite rare.  Indeed, the ATF agent who testified said he had examined hundreds of firearms and had only seen a Glock 19X one other time.  Thus, a rational trier of fact could conclude that the gun in the car was the same one Whitlow was carrying in those photographs.

Whitlow's arguments to the contrary aren't persuasive.  Whitlow argues that he didn't own the firearms or the car, and that other people had access to the car.  But the government didn't need to prove that he had exclusive possession or ownership to demonstrate that he had constructive possession.  *United States v. Kelsor*, 665 F.3d 684, 691–92 (6th Cir. 2011).  Whitlow also contends that the testifying detectives couldn't make out various features of the gun in the images or conclude with certainty that the object in the photographs was a firearm.  But the jury evaluated the detectives' credibility and apparently believed that the firearm in the photographs was the same as the one found at the traffic stop.  *See Farrad*, 895 F.3d at 875 (rejecting defendant's argument that photographs of him with a gun weren't clear).  We can't second-guess that determination.

Finally, Whitlow relies on *United States v. Grubbs*, 506 F.3d 434 (6th Cir. 2007).  But that case doesn't move the needle, either.  There, the government tried to show that the defendant constructively possessed a handgun found in the house where he was staying.  *Id.* at 436–37.  But the evidence connecting the defendant to the handgun was the vague testimony of a neighbor who saw the defendant with a "dark-colored," "automatic" gun weeks before the search.  *Id.* at 441.  Here, by contrast, the Instagram photographs showed Whitlow with an unusual firearm that

was a close match with the rare gun found in the car.  And Whitlow was found in the car with the guns.

Sufficient evidence thus supports the jury's finding that Whitlow knowingly possessed the firearms found during the traffic stop.

C.

Next, Whitlow argues that the court erroneously admitted two pieces of evidence under Federal Rules of Evidence 404(b) and 403.

Rule 404(b) prohibits the introduction of "[e]vidence of any other crime, wrong, or act to prove a person's character" to show that the person "acted in accordance" with his character. Fed. R. Evid. 404(b)(1).  But it permits the introduction of such evidence for any other purpose, including to prove the defendant's knowledge.  Fed. R. Evid. 404(b)(2).  Further, the probative value of the evidence cannot be substantially outweighed by the danger of unfair prejudice to the defendant.  Fed. R. Evid. 403.

We may reverse the district court's admission of evidence only if it admitted evidence for an improper purpose or abused its discretion in weighing the evidence's probative value and risk of unfair prejudice.  *United States v. Mandoka*, 869 F.3d 448, 456–57 (6th Cir. 2017).

Whitlow challenges the admission of his (1) Instagram photographs and (2) prior interaction with police.  We address each in turn.

1.

The government introduced the two Instagram photographs to show that Whitlow had knowledge of the firearms in the car.  That's a permissible purpose under Rule 404(b).  In addition, the photographs were highly probative because of the similarity between the weapon that Whitlow appeared to possess and the gun recovered from the traffic stop.

Even so, Whitlow argues the photographs were unfairly prejudicial.  He says the officers weren't sure the photograph really showed a gun and that they didn't know it was the same one

from the traffic stop.  But it was the jury's job to determine whether the pictures deserved any weight based on the officers' testimony.

Whitlow also invokes *United States v. Moore*, 709 F.3d 287, 295 (4th Cir. 2013), to argue that the pictures should have been inadmissible.  But that case involved pictures of the defendant with a different type of firearm than the one allegedly used at the crime.  *Id.* at 295–96.  And we've repeatedly upheld the introduction of photographs that appear to show the defendant with the same firearm as the one found at the crime scene.  *See, e.g.*, *United States v. Hunter*, 558 F.3d 495, 504 (6th Cir. 2009); *United States v. Whyte*, 795 F. App'x 353, 361–63 (6th Cir. 2019).

Finally, Whitlow points out that the district court acknowledged "there [would] be some prejudice" from admitting the photos.  Appellant Br. at 44 (quoting R. 70, Pg. ID 872).  But every piece of the government's evidence prejudiced Whitlow in some way—that's why the government introduced it.  Rather, the relevant questions are whether the admission of the photographs *unfairly* prejudiced Whitlow and whether the risk of such prejudice substantially outweighed the evidence's probative value.  Here, it didn't.  The district court thus properly admitted the photographs.

2.

The court also was right to admit the evidence of Whitlow's past interaction with police. At trial, an officer testified that a few months before the disputed traffic stop, he had stopped Whitlow driving the same vehicle.  Whitlow argues that this evidence was irrelevant to his possession of the firearms and unduly prejudicial.

Whitlow's argument fails.  As to relevance, Whitlow's previous use of the car makes it more likely that he knew of the firearms hidden in the glove compartment.  And this evidence wasn't unfairly prejudicial.  The officer testified only that he "ha[d] contact" with Whitlow on the previous occasion.  R. 70, Pg. ID 844.  The officer didn't mention whether he arrested, cited, or even warned Whitlow that he was committing a traffic violation.  The mere fact that Whitlow had a prior interaction with police didn't create unfair prejudice.  The court below committed no error.

D.

Whitlow also objected that an officer identified himself as being from the Cleveland Police Department's Homicide Unit.  He claimed it was unfairly prejudicial that the officer identified his unit.  The district court disagreed and allowed in this background information.

When the government called the detective to the stand, it began by asking for his job. The detective responded that he worked for the Cleveland Police Homicide Unit.  After asking around two dozen other questions, the government asked whether Whitlow's Instagram came to the detective's attention "[a]s part of an investigation." *Id.* at Pg. ID 852.  The officer said yes. Whitlow argues that this exchange led the jury to infer that Whitlow was under investigation for homicide.  Such an inference, Whitlow argues, could have led the jury to convict him on grounds unrelated to the felon-in-possession charge.

But neither the government nor the detective suggested that Whitlow was under investigation for homicide.  On the contrary, the government asked about the detective's employment as background long before mentioning Whitlow.  And the government mentioned that the detective came to Whitlow as part of "an" investigation—not necessarily a homicide one. *Id.*  This testimony is similar to testimony we've upheld in the past because it provides "necessary background" into how investigators were led to the defendant. *United States v. Gibbs*, 506 F.3d 479, 484 (6th Cir. 2007).  Thus, the one passing mention to the Homicide Unit wasn't unduly prejudicial.

Whitlow, for his part, claims that the "jury could infer . . . there was a homicide investigation involving Mr. Whitlow."  Appellant Br. at 48.  But at this stage, we must give the evidence its "minimal reasonable prejudicial value." *United States v. You*, 74 F.4th 378, 388 (6th Cir. 2023) (citation omitted).  And the jury could reasonably infer that Whitlow was a witness to a homicide or an associate to someone else under investigation.  What's more, that's assuming the jury still had in mind the detective's position in the Homicide Unit after the intervening questions.  And Whitlow's counsel was, of course, free on cross-examination to clarify Whitlow's involvement in the detective's investigation.  Thus, the testimony was not so fatally prejudicial to Whitlow that he deserves a new trial.

Whitlow also cites *United States v. Blanton*, 520 F.2d 907, 909 (6th Cir. 1975). But *Blanton* is distinguishable. There, the defendant was charged with firearms offenses. *Id.* At trial, a witness declared that the defendant was "under investigation for bank robbery." *Id.* Here, however, the government made no overt connection between Whitlow and a homicide investigation, unlike with the *Blanton* defendant and the bank robbery. Thus, we reject Whitlow's challenge to the detective's testimony.

E.

Finally, Whitlow challenges the procedural reasonableness of his sentence. He argues that the district court erred in applying a two-level enhancement under U.S.S.G. § 2K2.1(b)(4) for possessing a stolen firearm. This Guideline requires the government to show by a preponderance of the evidence that the firearm the defendant possessed was stolen. *See United States v. Alvarado*, 95 F.4th 1047, 1053 (6th Cir. 2024). Whitlow claims there was insufficient evidence to support this finding. His claim fails.

At the sentencing hearing, an officer testified that he traced the ownership of the Ruger found during the traffic stop to its most recent owner. That owner told the officer the Ruger was stolen. The officer then testified that the latest owner didn't report the theft because he was a felon and couldn't legally own a firearm.

Whitlow responds that this evidence wasn't reliable because the owner didn't testify at sentencing and the government lacked corroborating evidence. His argument fails. At sentencing, the district court can consider information so long as it has "*some* evidentiary basis" and a "minimal indicium of reliability." *United States v. Armstrong*, 920 F.3d 395, 398 (6th Cir. 2019) (emphasis in original) (citation omitted). This requirement is a "relatively low hurdle," and our review of the district court's decision is highly deferential. *Id.* (citation omitted). We may reverse a district court's reliability finding only if it was clearly erroneous. *Id.*

Here, the evidence was sufficiently reliable. Hearsay is admissible at sentencing, so cross-examination of an out-of-court witness—the gun owner—wasn't required. *United States v. O'Lear*, 90 F.4th 519, 539 (6th Cir. 2024). And the last owner's statement bears a key indication of reliability—it was a statement against interest because the owner admitted to being a felon in

possession. Under the usual rules of evidence, an out-of-court statement is considered unreliable and thus inadmissible. But if it's an out-of-court statement against the interest of the person who made it, the statement is considered more reliable and thus often admissible if that person is unavailable. *See* Fed. R. Evid. 804(b)(3)(A). While the Federal Rules don't apply at sentencing, the rationale behind Rule 804(b)(3)(A) applies here: the out-of-court statement was reliable because it exposed the owner to criminal liability for unlawfully possessing the firearm. Thus, because the officer's testimony was reliable, the government met its burden of proof to show that the firearm in question was stolen.

At any rate, even if the court erred by imposing the enhancement (it didn't), any error would be harmless. The court made clear that it would've imposed the same 120-month sentence regardless of the stolen-firearm enhancement. In such a situation, an error in calculating the Guidelines range is harmless. *United States v. Morrison*, 852 F.3d 488, 491 (6th Cir. 2017).

*        *        *

We affirm.