NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0394n.06

Case Nos. 24-1704/22-1848

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 08, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF MICHIGAN |
| MICHAEL HINDS, | ) | |
| Defendant - Appellant. | ) | OPINION |
| | ) | |

Before: COLE, READLER, and RITZ, Circuit Judges.

**RITZ, Circuit Judge.** Michael Hinds appeals his conviction and sentence for drug and firearms crimes. We affirm.

## BACKGROUND

### I. Police stop and arrest

In November 2017, two Detroit police officers saw a car filled with smoke parked on a residential street. When the officers pulled up beside the car, they saw Michael Hinds in the passenger seat and another man in the driver's seat. One of the officers, Daniel Harnphanich, asked if anyone in the car had a gun; both men said no.

Harnphanich approached the driver's seat window and saw Hinds rolling a marijuana joint. Even though Hinds said he had a medical-marijuana license, Harnphanich believed that Hinds was illegally transporting marijuana in violation of the Michigan Medical Marihuana Act (MMMA). *See* Mich. Comp. Laws §§ 333.26421-.26430. So, the officers searched the car.

In a bag under Hinds's seat, the officers found crack cocaine baggies, containers of marijuana, a digital scale, and a pistol. They arrested Hinds. But before they brought him to the station, another officer, Christopher Bush, said he thought Hinds had money in his pockets. Bush removed Hinds from the police car and searched him, finding about $2,100 cash in Hinds's underwear.

## II. Pretrial events

The government charged Hinds with possessing cocaine base with intent to distribute, *see* 21 U.S.C. § 841(a)(1), possessing a firearm in furtherance of a drug trafficking crime, *see* 18 U.S.C. § 924(c), and being a felon in possession of a firearm, *see id.* § 922(g)(1). Hinds moved to suppress the evidence from the car, arguing that the officers lacked probable cause to believe the car would contain evidence of an MMMA violation. The district court denied the motion, concluding that the officers had probable cause based on federal law.

Eight months before Hinds's trial, in July 2021, the Detroit Police Department issued an internal report recommending that Bush be fired for misconduct. According to the report, in January 2020, Bush participated in a high-speed chase that killed a car passenger and, while doing so, violated several department policies. The report found that Bush did not turn on his bodycam during the chase and kept his car's sirens and lights off, possibly to avoid triggering the car's cameras. Bush also lied to his superiors about the chase, with the report concluding that it appeared that he "attempted to conceal the incident as it transpired." RE 212-3, Final Admin. Rev., PageID 3232, 3235, 3237.

The government did not disclose the investigation or disciplinary report to Hinds. But because the information would have hurt Bush's credibility, the government decided not to call

him at trial. Instead, two days before the trial, the government told Hinds that it would call another police officer who was present during his arrest.

### III.    Trial and sentencing

Hinds went to trial in March 2022. At trial, both testifying officers spoke about Bush's actions during the search and arrest. At one point, the officer who replaced Bush as a witness recounted Bush's statement that Hinds had cash on him. The government also showed portions of Harnphanich's bodycam footage that included Bush. While deliberating, the jurors asked the judge why Bush, "the officer who performed the search and recovered the money," was not called. RE 168, Trial Tr., PageID 1683. The court answered that the government believed Bush's testimony would have been "cumulative." *Id.* at PageID 1689.

The jury found Hinds guilty on all counts. His presentence report (PSR) recommended that he receive an enhanced sentence under the Armed Career Criminal Act (ACCA). *See* 18 U.S.C. § 924(e)(1). That law imposes a fifteen-year minimum sentence on defendants convicted under § 922(g) who have three prior convictions for "violent felon[ies]" or "serious drug offense[s]" that were "committed on occasions different from one another." *Id.*

Hinds objected, arguing that a jury must find the ACCA's different-occasions element beyond a reasonable doubt. Because *Erlinger v. United States*, 602 U.S. 821 (2024), had not yet been decided, our then-binding precedent to the contrary controlled, so the district court rejected Hinds's argument. *See United States v. Williams*, 39 F.4th 342, 351 (6th Cir. 2022). The district court sentenced Hinds to the mandatory minimum sentence of twenty years.

### IV.    Motion for new trial

While his appeal was pending, Hinds moved the district court for an indicative ruling on a motion for a new trial. Hinds explained that he learned about the investigation into Bush after the

trial and argued that the prosecutors violated his right to due process by failing to disclose the resulting report. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Giglio v. United States*, 405 U.S. 150, 153-54 (1972). The district court ruled that it would deny Hinds's new trial motion. Although the court believed that the government's failure to disclose Bush's disciplinary record was "ethically questionable," the court ultimately concluded that Hinds had not been prejudiced, "mainly because Bush did not testify." RE 218, Order, PageID 3343-44, 3365.

## ANALYSIS

Hinds now challenges both his conviction and sentence. He claims that the district court should have (1) suppressed the evidence recovered during the car search, (2) ruled that he was entitled to a new trial based on *Brady* violations, and (3) allowed a jury to decide the ACCA's different-occasions element. We disagree as to the first two claims. And while we agree that the district court erred by not submitting the ACCA different-occasions inquiry to the jury, we conclude that the error was harmless. So we affirm.

## I.     Motion to suppress

"When reviewing a district court's denial of a motion to suppress, we review findings of fact for clear error and review conclusions of law de novo." *United States v. Underwood*, 129 F.4th 912, 930 (6th Cir. 2025). Here, the district court did not err because the officers had probable cause to believe they would find evidence of a federal crime in the car.

Although the Fourth Amendment requires that officers obtain a warrant based on probable cause before conducting a search, the "automobile exception" allows for warrantless searches "where probable cause exists to believe that evidence of a crime will be found in [a] car." *United States v. Whipple*, 92 F.4th 605, 613 (6th Cir. 2024). We ask whether the "objective facts known to the officers at the time of the search," *Smith v. Thornburg*, 136 F.3d 1070, 1075 (6th Cir. 1998),

demonstrate a "fair probability that contraband or evidence of a crime will be found in a particular place," *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Officers need not make "an actual showing of [criminal] activity." *Id.* at 243 n.13.

The officers in this case had probable cause because they saw Hinds committing a federal crime: marijuana possession, which the federal Controlled Substances Act (CSA) prohibits in most cases. *See* 21 U.S.C. §§ 812, 844; *Gonzales v. Raich*, 545 U.S. 1, 14 (2005). And because Hinds was possessing marijuana in a car, the officers could reasonably infer that the car would contain evidence like rolling papers, more marijuana, or paraphernalia. *See Carter v. Parris*, 910 F.3d 835, 839 (6th Cir. 2018) ("Seeing a small bag of marijuana (an illegal controlled substance in Tennessee) is enough to give officers probable cause to search a vehicle.").

Hinds does not challenge that conclusion. Instead, he contends that suppression was warranted either because Harnphanich initially justified the search on state-law grounds or because the officers lacked authority to enforce federal marijuana law.

Hinds's first argument is foreclosed by Supreme Court precedent. In the context of warrantless arrests—which must also be supported by probable cause—the Court has held that an officer's "state of mind," including "the offense actually invoked at the time of arrest," is "irrelevant" to the probable cause determination. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). Nor must the "offense invoked" and the offense supporting probable cause be "closely related." *Id.* at 152-53. What matters is whether the facts Harnphanich knew at the time "provide[d] probable cause" for the search, *id.* at 153—which they did.

Hinds's second argument also fails. We recently addressed the Fourth Amendment's applicability to state enforcement of federal marijuana law in *United States v. Whitlow*, 134 F.4th 914 (6th Cir. 2025). There, we held that absent specific federal prohibition, "the Fourth

Amendment does not prevent state officers from enforcing federal law." *Id.* at 920. And because the CSA is silent on state-officer enforcement, *id.*, when evaluating searches based on violations of that law, courts need only ask "the ordinary Fourth Amendment question: whether the officer had probable cause" for the search, *id.* at 922.

*Whitlow* controls here. Having already determined that the officers had probable cause to search, we are bound by *Whitlow*'s conclusion that, under these circumstances, the officers permissibly acted to enforce federal marijuana law. As in *Whitlow*, Michigan law is silent on a state officer's enforcement of the CSA. 134 F.4th at 920. And, at the time of the search in this case, Michigan had not generally decriminalized marijuana. *See People v. Kejbou*, 19 N.W.3d 393, 398-99 (Mich. Ct. App. 2023). To be sure, Hinds had a medical marijuana license, so his actions may have been arguably legal under Michigan law. But despite Hinds's MMMA license, marijuana transport remained presumptively unlawful and thus evidence of a possible crime that could support probable cause, *see People v. Anthony*, 932 N.W.2d 202, 215 (Mich. Ct. App. 2019), even if his license could have provided an affirmative defense had he been charged with a marijuana offense.

The federal spending bill in effect at the time of the search does not affect our conclusion. Because that law disallowed federal funds from being used to impede state medical-marijuana legalization, *see* Consolidated Appropriations Act, 2017, Pub. L. No. 115-31, div. B, § 537, 131 Stat. 135, 228 (2017), Hinds argues that it deprived the officers of authority to enforce the CSA. But he has not shown that the officers who conducted the search were using federal funds. And Hinds was not prosecuted in federal court for a marijuana-related offense, so his charges could not have eclipsed Michigan's medical-marijuana rules. *See Whitlow*, 134 F.4th at 920 n.2. Because

the officers here had probable cause and were authorized to search, we affirm the denial of Hinds's motion to suppress.

## II.    New trial motion

We also affirm the denial of Hinds's *Brady* claim.  We review the district court's denial of a motion for a new trial for abuse of discretion, assessing its "determination as to the existence of a *Brady* violation" de novo.  *United States v. Graham*, 484 F.3d 413, 416-17 (6th Cir. 2007).

Under *Brady*, prosecutors must disclose evidence that is "favorable to the accused and material to either guilt or punishment," including evidence used to impeach a government witness's credibility.  *Thomas v. Westbrook*, 849 F.3d 659, 663 (6th Cir. 2017) (citing *Brady*, 373 U.S. at 87); *accord Giglio*, 405 U.S. at 153-54.  All agree that the suppressed disciplinary report was favorable to Hinds.  But the report is material only if its disclosure would have created a "reasonable probability of a different result."  *Turner v. United States*, 582 U.S. 313, 324 (2017) (citation modified).  In other words, we ask whether "the suppressed evidence undermines confidence in the outcome of the trial."  *Id.* (citation modified).

The district court did not abuse its discretion or otherwise err in denying Hinds's motion for a new trial because the Bush disciplinary report was not material.  Although it could have undermined Bush's credibility if he had testified, its disclosure would not have made a different result reasonably probable.[1]

---

[1] Because we conclude that the suppressed report is not material, we assume without deciding that *Brady* and *Giglio* apply to evidence used to impeach non-testifying witnesses.  *See United States v. Jackson*, 345 F.3d 59, 71 (2d Cir. 2003) (observing that *Brady* "may require disclosure of . . . impeachment materials" concerning either "a testifying witness or a hearsay declarant"); *see also Kyles v. Whitley*, 514 U.S. 419, 444-45 (1995) (holding that government was required to disclose of impeachment evidence relevant to non-testifying eyewitness).

First, Bush was not necessary to the government's case. He did not lead the initial stop or search the car; Harnphanich did. So unlike those cases where we have found materiality, this case did not "hinge[]" on Bush's actions. *Harris v. Lafler*, 553 F.3d 1028, 1034 (6th Cir. 2009). He was at most a secondary player.

True, the jurors noticed Bush's absence. They asked why he did not testify. But the jury note proves nothing about whether Bush's testimony, and by extension the disciplinary report, would have affected the verdict. And while disclosure of the disciplinary report to the court might have prompted the trial judge to instruct the jurors that they were permitted to draw an adverse inference from Bush's absence, rather than describe his testimony as "cumulative," it is unlikely that such an instruction would have overcome the evidence presented against Hinds at trial. RE 168, Trial Tr., PageID 1689.

After all, even if Hinds had introduced the report, the jurors still would have considered extensive evidence that did not involve Bush. They heard that Harnphanich saw Hinds rolling a joint in the car. Harnphanich also described searching the car and finding the gun, drugs, and the digital scale below the seat where Hinds was sitting. And the jurors watched bodycam footage that largely corroborated Harnphanich's account. The same footage depicted Harnphanich unpacking the evidence on the car's hood. Finally, the jury saw a picture of the recovered items that was taken at the time they were found. The disciplinary report would not have contravened any of this evidence, from which the jury could reasonably find Hinds guilty.

Hinds identifies two alternative uses of the report, but neither shows materiality. First, he says he could have used Bush's disciplinary history to argue that Bush tampered with the drugs at some point before trial. But the disciplinary report does not suggest that Bush tampered with

evidence to facilitate a defendant's arrest or conviction, only that he previously took steps to conceal his own involvement and misconduct in a fatal pursuit.

Hinds also claims that the disciplinary report would have undermined the officers' reason for searching his underwear, where they found the cash. Had the court seen the report, he reasons, the cash might have been excluded. Even so, the jurors would have still heard about the money because the police would have found it in a search incident to Hinds's arrest. *See Arizona v. Gant*, 556 U.S. 332, 339 (2009). In all, given the evidence against Hinds, we hold the report's suppression did not affect the trial's integrity.

## III. Sentencing appeal

Finally, we affirm Hinds's sentence. The district court erred by enhancing Hinds's sentence without allowing the jury to determine whether the government proved the ACCA's different-occasions element. *Erlinger*, 602 U.S. at 835. We review such errors for harmlessness, asking "whether the government proved beyond a reasonable doubt . . . that, absent the error, any reasonable jury would have found that [the defendant] committed the prior offenses on different occasions." *United States v. Cogdill*, 130 F.4th 523, 527-28 (6th Cir. 2025).

In answering this question, we may consider "all relevant and reliable information in the entire record," evaluating those metrics on a "case-by-case" basis. *United States v. Thomas*, 142 F.4th 412, 419 (6th Cir. 2025) (quoting *United States v. Campbell*, 122 F.4th 624, 632-33 (6th Cir. 2024)) (internal quotation marks omitted). Here, the district court appeared to rely exclusively on the criminal history outlined in Hinds's PSR. In different circumstances, there may be debate about whether the PSR and other such materials in the record meet this standard. *See Thomas*, 142 F.4th at 424-25 (Cole, J., concurring) (arguing that "courts must exercise caution" when "us[ing] [documents including the PSR] for the different-occasions inquiry"); *Campbell*, 122 F.4th at 635

(Davis, J., concurring) (similar). But Hinds does not question the reliability of any prior-conviction-related information in the record. And the district court "did not have to go beyond the fact of [Hinds's] convictions—the dates and the offense elements—to determine that they constituted qualifying offenses." *See Thomas*, 142 F.4th at 426 (Cole, J., concurring); *accord Erlinger*, 602 U.S. at 839.

This case is like the post-*Erlinger* cases where we have found harmless error. *See Thomas*, 142 F.4th at 418-19; *United States v. Robinson*, 133 F.4th 712, 723-25 (6th Cir. 2025); *Campbell*, 122 F.4th at 629-33. As in those cases, Hinds's prior convictions differed from each other in time, place, and character. *See Campbell*, 122 F.4th at 629.

Hinds does not contest that he had been convicted of: (1) armed robbery in Detroit in 2001, (2) delivery/manufacture of cocaine in Eastpointe, Michigan in July 2015, and (3) delivery/manufacture of heroin in Warren, Michigan in May 2016. At the outset, the armed robbery was committed on a different occasion because it happened fourteen years before the 2015 drug offense and involved a substantively different crime. That "start[s] [Hinds's] predicate offense count at one." *Id.* at 632.

A jury would also conclude that Hinds committed the two drug offenses on different occasions. As in *Campbell*, the crimes were separated by months, *id.* at 632—almost a year in this case. They also "involved different drugs." *See Robinson*, 133 F.4th at 724. According to the PSR, the Eastpointe conviction involved cocaine and marijuana, while the Warren conviction involved heroin. Finally, Hinds was "punished and sentenced . . . for one of the drug offenses before he committed the other one." *Id.* That "significant intervening event[]" between the two offenses indicates that they were not part of a "single uninterrupted course of conduct," *Wooden*

*v. United States*, 595 U.S. 360, 369-70 (2022), forming "one continuous . . . felony," *Thomas*, 142 F.4th at 418.

To be sure, the drug crimes were committed near each other. Eastpointe neighbors Warren—by car their centers are less than ten miles apart. And our other *Erlinger* cases have considered the predicate offenses' physical proximity. *See, e.g.*, *Campbell*, 122 F.4th at 632 ("[T]he first two offenses are likewise remote as a matter of proximity."). But here, location is nondeterminative because both "the dates of each offense and the absence of any common scheme or purpose" support a finding of different occasions. *Thomas*, 142 F.4th at 418.

Indeed, this case differs significantly from our cases where we have found a harmful *Erlinger* error. *See United States v. Kimbrough*, 138 F.4th 473, 477-79 (6th Cir. 2025); *Cogdill*, 130 F.4th at 529-31. *Cogdill* and *Kimbrough*, to illustrate, dealt with "prior felonies that occurred days apart, and a PSR that omitted key factual details, like location." *Thomas*, 142 F4th at 419 n.1. In contrast, the uncontested information in Hinds's PSR shows that the district court's different-occasions error was harmless.

## CONCLUSION

For these reasons, we affirm.