RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0355p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

RICCO SAINE,

*Defendant-Appellant*.

⎤
⎟
⎟
⎟
⎟
>  No. 24-5638
⎟
⎟
⎟
⎟
⎦

────────────────

Appeal from the United States District Court for the Eastern District of Tennessee at Greeneville.
No. 2:21-cr-00109-1—J. Ronnie Greer, District Judge.

Argued: October 27, 2025

Decided and Filed: December 22, 2025

Before: READLER, MURPHY, and BLOOMEKATZ, Circuit Judges.

────────────────

## COUNSEL

────────────────

**ARGUED:** Andrew S. Pollis, Damien Chafin, CASE WESTERN RESERVE UNIVERSITY SCHOOL OF LAW, Cleveland, Ohio, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Andrew S. Pollis, Katherine Clawson, Melissa A. Ghrist, CASE WESTERN RESERVE UNIVERSITY SCHOOL OF LAW, Cleveland, Ohio, for Appellant. B. Todd Martin, UNITED STATES ATTORNEY'S OFFICE, Greeneville, Tennessee, for Appellee.

────────────────

## OPINION

────────────────

BLOOMEKATZ, Circuit Judge. Ricco Saine was convicted of two counts of knowingly possessing a firearm as a convicted felon. On appeal, he challenges his conviction on two grounds: *First*, he argues the district court erroneously denied his motion to suppress evidence

seized from his truck following a search based on a drug dog's positive alert. *Second*, he argues the district court erred by admitting a text message because it is improper propensity evidence. We disagree and affirm Saine's conviction.

**BACKGROUND**

I.      **Drug Dog Alert**

The relevant facts we recount here are not in dispute. In August 2021, Officer Aaron Blevins approached Ricco Saine while Saine was next to his truck in a motel parking lot. Because a Be on the Lookout (BOLO) alert indicated Saine was suspected of narcotics trafficking and because Officer Blevins believed this particular motel was a "known drug location," Officer Blevins called for a K9 unit. Mot. to Suppress Hr'g Tr., R. 217, PageID 1996–98. Officer Travis Bates arrived roughly ten minutes later with his K9, who is certified to detect methamphetamine, cocaine, heroin, and marijuana. Officer Bates's K9 was not trained to distinguish "between legal cannabis and marijuana." *Id.* at PageID 2010. Tennessee, where the search took place, criminalizes possession of marijuana, *see, e.g.*, Tenn. Code Ann. § 39-17-417(g), but not hemp, *id.* § 39-17-402(16)(C), or certain byproducts of the marijuana plant, *id.* § 39-17-402(16)(B), (E).

Officer Bates's K9 alerted next to the driver's side rear door. Following this alert, officers searched Saine's truck. They found a "small amount of what appeared to be marijuana," Mot. to Suppress Hr'g Tr., R. 217, PageID 2009, but the record does not establish the substance's actual identity. They also found an unzipped bag containing a firearm, identified as a Ruger EC9S, 9mm semiautomatic pistol (the Ruger), alongside Saine's ID.

II.     **Discovery of Additional Firearms**

A few weeks later, Officer Mike Slater went to the home of Ricco and Tonya Saine.[1] Saine was not present. While there, Officer Slater photographed three firearms which Tonya claimed she owned: a Walther, model PK380, .380 caliber pistol (the Walther); a Springfield Armory, model Saint, 5.56 caliber rifle (the Springfield); and a second pistol. Officer Slater later

---

[1]We refer to Tonya Saine by her first name to avoid confusion between her and Ricco Saine.

obtained surveillance video footage which showed Tonya purchasing the Walther and the Springfield from a local gun store while with Saine.

Roughly a month after the police discovered these guns, Saine was arrested on unrelated charges. While in police custody, he tried to make a deal with Officer Slater. He offered to tell Tonya "to hand over his AR-15" if Officer Slater agreed to vouch for his release. Trial Tr. Vol. II, R. 265, PageID 3419. Around this same time, the police seized both the Walther and the Springfield from Tonya. Executing a search warrant, the police also acquired Saine's cellphone and downloaded its data. This data included a text conversation between Saine and Tonya featuring the following exchange:

> Tonya: "I've got your gun and stuff in the house"
> Saine: "K"

*Id.* at PageID 3443–44. These messages were sent eight days after Tonya purchased the Walther and the Springfield.

## III.    Procedural History

The government charged Saine with two counts of unlawfully possessing a firearm as a convicted felon. *See* 18 U.S.C. §§ 922(g)(1), 924(e)(1). In one count, it charged Saine with possessing the Ruger found in his truck outside the motel. In the other, it charged him with possessing both the Walther and the Springfield discovered at his and Tonya's home.

### A.     Saine's Motion to Suppress

Saine moved the district court to suppress the Ruger, arguing that the police uncovered it through an unconstitutional search of his truck. His motion to suppress primarily focused on whether the police were justified in calling for a K9 unit in the first place, though he does not renew this argument on appeal. At the suppression hearing, he questioned whether the K9 could differentiate between legal substances, like hemp, and illegal marijuana substances. Saine presses this argument now.

The district court rejected Saine's argument that the K9's inability to differentiate between hemp and illegal marijuana rendered the search unconstitutional. It reasoned that

*Florida v. Harris*, 568 U.S. 237 (2013), held that the alert of a drug sniffing dog is presumptively sufficient for probable cause, and it noted that Saine did not provide any caselaw indicating that a K9 alert is unreliable when the dog cannot distinguish between legal cannabis and illegal marijuana.

After the district court denied his motion to suppress, Saine's case proceeded to trial.

### B. Saine's Objection to Admission of the Text Message Exchange

At trial, Saine, through counsel, objected to admission of the text exchange in which Tonya indicated Saine's "gun and stuff" were at their house. He argued that the exchange was inadmissible both as hearsay and as improper propensity evidence under Federal Rule of Evidence 404(b). As to the hearsay issue which Saine does not renew on appeal, the district court agreed with the government that the exchange could serve as proof of Saine's state of mind (i.e., to prove he knew about the gun) rather than for the truth of the matter asserted (i.e., that she had his gun at home). The district court never directly addressed Saine's 404(b) objection, but it did admit the evidence to prove that Saine "knew [Tonya] had a gun that belonged to him." Trial Tr. Vol. II, R. 265, PageID 3362. The district court offered to give the jury a limiting instruction on this evidence, but Saine's counsel declined.

The jury returned a guilty verdict on both counts.

### ANALYSIS

Saine challenges his conviction on two grounds. *First*, Saine argues that the district court erred when it declined to suppress the Ruger because the police did not have probable cause to search his truck even after the positive alert from the K9.[2] *Second*, Saine argues that the district court erred in admitting the text message exchange because, absent evidence linking the message's reference to "your gun" to the specific guns charged in the indictment, this evidence constituted impermissible propensity evidence.

---

[2]The government argues that this argument is waived on appeal because Saine did not object to the magistrate judge's report and recommendation. But any possible forfeiture is not a jurisdictional barrier, *see Thomas v. Arn*, 474 U.S. 140, 155 (1985), and we need not address forfeiture given our resolution on the merits, *see United States v. West*, 789 F. App'x 520, 522 (6th Cir. 2019).

## I.    Fourth Amendment

When reviewing a district court's order denying a motion to suppress, we review factual findings for clear error and conclusions of law de novo. *United States v. Stevenson*, 43 F.4th 641, 644 (6th Cir. 2022).  Officers may search a car without a warrant if they have probable cause to believe it contains evidence of criminality. *Hernandez v. Boles*, 949 F.3d 251, 259 (6th Cir. 2020).  In *Florida v. Harris*, the Supreme Court held that a K9's positive alert presumptively supplies probable cause to search a vehicle so long as the government provides evidence that the K9 reliably identifies contraband in controlled settings.  568 U.S. at 248.

At issue here is whether *Harris*'s presumption that a K9's positive alert provides probable cause still applies with the same force when a state has legalized marijuana, at least in some forms, or other substances, like hemp, whose smells are indistinguishable from marijuana. Saine argues *Harris* does not apply here since the K9 could not distinguish between legal and illegal substances and *Harris* depended on the K9's ability to distinguish between contraband and non-contraband.  Saine relies on the fact that the K9 in this case could not distinguish between hemp—which is legal in Tennessee—and illegal marijuana.

This argument fails because probable cause determinations focus on probabilities, not certainties.  Probable cause does not require officers to eliminate alternative innocent explanations. *See United States v. Martin*, 289 F.3d 392, 400 (6th Cir. 2002).  Rather, it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (citation modified).  So the fact that an officer—or a K9—*could* have merely smelled hemp or another legal cannabis substance does not necessarily negate probable cause.

We have already held that human officers smelling marijuana can provide probable cause for an arrest, even when certain types of cannabis are legal. *See United States v. Santiago*, 139 F.4th 570, 574–75 (6th Cir. 2025).  Saine argues that K9s are categorically different from human officers.  Specifically, he contends that K9s are like a device that provides an automatic response upon smelling certain drugs, while human officers can take account of the surrounding circumstances beyond the smell, and officers can consider other contextual factors in distinguishing between legal and illegal cannabis substances.  But the context of a dog sniff

always must be considered too.  The Supreme Court recognized as much in *Harris* when it noted that the circumstances of any specific K9 alert may make it unreliable.  568 U.S. at 247.  Saine, therefore, has not provided us a persuasive reason to distinguish *Santiago* here.

Nor are there contextual factors that make this K9 alert unreliable.  There may come a day when hemp or other legal cannabis substances are so pervasive that the alert of a K9 trained to identify the smell of marijuana, but not to distinguish between legal and illegal forms of cannabis, no longer tends to indicate a "fair probability" of contraband.  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Based on the sparse record before us in this case, that day is not today.

Instead, multiple other factors in this case support our conclusion that Officer Blevins had probable cause to search Saine's truck.  Officer Blevins testified that this particular motel is a "known hot bed of criminal activity," including drug crimes, based on his experience as an officer.  Mot. to Suppress Hr'g Tr., R. 217, PageID 1998.  And there was a BOLO alert indicating Saine was potentially involved in narcotics trafficking.  Taking all this together—the K9 alert, the location, and the BOLO—the "totality of the circumstances" reflects a fair probability that contraband would be found in Saine's truck.  *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).  So the officers had probable cause to search it.

Thus, the district court did not err when it denied Saine's motion to suppress.

## II.     Rule 404(b)

Federal Rule of Evidence 404(b) requires the district court to exclude evidence of prior bad acts if the evidence is offered to show a person is likely to act in that same bad way again.  *See* Fed. R. Evid. 404(b)(1) (governing admission of evidence of "other crime[s], wrong[s], or [bad] act[s]").  Before admitting such evidence, the district court must make an initial determination that there is "sufficient evidence to support a finding by the jury that the defendant committed" the prior bad act.  *United States v. Clay*, 667 F.3d 689, 694 (6th Cir. 2012) (quoting *Huddleston v. United States*, 485 U.S. 681, 685 (1988)).  After this determination, the court must then analyze whether the evidence was admitted for a proper purpose and whether its inclusion would be unduly prejudicial.  *Id.* at 694, 696.

Here, Saine argues that the district court erred by admitting the text exchange between him and Tonya, where Tonya messaged "I've got your gun and stuff in the house," and Saine replied, "K." He contends that this exchange could have been referring to a different, uncharged gun. And, if it were, then the jury may have inferred that because Saine previously possessed a firearm, he was likely to do so again. Saine argues that using the texts to demonstrate his propensity to possess guns would be impermissible under Rule 404(b).

But this argument puts the cart before the horse. The district court did not admit the texts to prove that Saine possessed another firearm; rather, it admitted the texts to prove what he "knew." Trial Tr. Vol. II, R. 265, PageID 3362. Since Saine's knowledge is not itself a prior bad act, Rule 404(b) is not the correct framework. Indeed, the district court offered to give the jury a limiting instruction on this evidence, instructing them to only consider it as evidence of Saine's "state of mind" or "what he knew." *Id.* at PageID 3363. This instruction would have addressed Saine's concerns that the jury might make an impermissible propensity inference. However, Saine's counsel made a strategic decision to reject the instruction.

Even if we did apply Rule 404(b) to this evidence, however, this challenge would still fail. The first inquiry is whether there was sufficient evidence for a jury to find that the prior bad act occurred. *Clay*, 667 F.3d at 694. But there might not be a prior bad act at all. The text was sent just eight days after the Walther and Springfield were purchased and three days before officers found these guns at the couple's shared home, which is where Tonya said the gun was in her text. It is possible the text referred to another handgun, perhaps the unindicted pistol the officers found at the house. Despite this, there was enough evidence in the record that the text *did* refer to the Walther or Springfield to justify sending the question to the jury. *See United States v. Whitlow*, 134 F.4th 914, 925 (6th Cir. 2025) (admitting photographs of the defendant holding a firearm, even though the defendant alleged they depicted a different firearm than the one charged in his indictment); *see also United States v. Hunter*, 558 F.3d 495, 504 (6th Cir. 2009) (admitting similar evidence over a Rule 403 objection); *United States v. Gibbs*, 797 F.3d 416, 422–23 (6th Cir. 2015) (same). The government contends "your gun" refers to the Walther

or the Springfield; Saine contends it does not. Whose version of the facts is correct is a quintessential jury question.**[3]**

Saine finally points out that, even if the district court admitted the texts for a proper purpose, the evidence is still inadmissible if its prejudicial effect substantially outweighs its probative value. *Clay*, 667 F.3d at 696. On review, we "look at the evidence in the light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect." *United States v. Zipkin*, 729 F.2d 384, 389–90 (6th Cir. 1984). The potential prejudice if the jury concluded "your gun" referred to some uncharged gun does not substantially outweigh the probability that it referred to the Walther or Springfield and was thus probative of the government's case. Thus, the district court did not abuse its discretion in admitting the text.

## CONCLUSION

We affirm Saine's conviction.

---

**[3]***United States v. Grubbs*, 506 F.3d 434 (6th Cir. 2007), which Saine relies on for the proposition that there must be a nexus between the firearm referenced in the evidence and the one charged, does not say otherwise. In that case, we called it a "tenuous leap" to infer the defendant possessed a black, semi-automatic gun based on his earlier possession of a "dark-colored" and "automatic" gun. *Id.* at 441. However, evidence of Grubbs's prior possession was not excluded under Rule 404(b); instead, we held the testimony was insufficient to support a conviction without persuasive additional evidence. *Id.* at 441–43. On appeal, Saine does not dispute that there was sufficient evidence to convict him, so *Grubbs* is inapposite.